1
2
3
4
5
6
7
8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC MITCHELL,

11          Petitioner,              No. 2:10-cv-3311 GEB DAD P

12     vs.

13   GARY SWARTHOUT,

14          Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Therein, petitioner challenges his May 27, 2009 prison

18   disciplinary conviction for possession of a camera cell phone and a resulting loss of 30 days of

19   time credits.  Petitioner seeks expungement of his disciplinary conviction from his central file.

20   For the following reasons, and upon careful consideration of the record and the applicable law,

21   the undersigned recommends that petitioner's application for habeas corpus relief be denied.

22   **I.  Background**

23          On May 23, 2009, Correctional Officer (C/O) J. H. Henderson wrote a rules

24   violation report (Log. No. S4-09-05-0332) (hereinafter "RVR") charging petitioner with "poss. of

25   a camera cellphone," in violation of 15 California Code of Regulations § 3006(c)(19).  (Doc. No.

26   1 (Pet.) at 39.)  Therein C/O Henderson alleged as follows:

1

1
2
3
4
5
6
7
8
9

On 05-22-09, at approximately 1425 hours, while assigned to Building 24 as the Housing Officer, I conducted a bed area search of Inmate MITCHELL (E-99956, 24-25OU).  Prior to the search MITCHELL was standing at his bed area cooking.  I ordered him to submit to a clothed body search which he complied.  The search resulted in negative results.  The search of his locker resulted in the discovery of (1) Motorola Camera cellphone located on the top shelf about midway.  I identified MITCHELL by his State issued ID.  MITCHELL said that he uses the upper locker, which is consistent with him being the owner of the phone.  On white correction tape I wrote J.H. Henderson, May 22, 09, MITCHELL, E-99956, and attached it to the phone.  I then placed the phone into evidence locker #22.  This concludes my involvement in this matter.

This subject is not an inmate participant in the Mental Health Services Delivery System and is aware of this report.

10   (Id.)  The disciplinary charge against petitioner was classified as a serious Division F offense.

11   (Id.)

12          On May 27, 2009, the disciplinary hearing on the RVR commenced.  (Id. at 41.)

13   At that hearing petitioner acknowledged that he had received a copy of the RVR more than 24

14   hours in advance of the hearing, and stated that he understood these documents and the charges

15   against him.  (Id.)   Petitioner requested the assignment of an investigative employee.  His

16   request was denied by the Senior Hearing Officer (SHO) because "the complexity of the issues

17   does not require further investigation," and petitioner's housing status made it likely that he

18   could collect the evidence necessary to present an adequate defense.  (Id.)  Petitioner confirmed

19   that he understood the SHO's decision in this regard and requested to continue with the hearing

20   notwithstanding that decision.  (Id.)  Petitioner waived the assistance of a Staff Assistant and

21   none was provided.  (Id.)

22          Petitioner entered a plea of "not guilty" to the charge and stated: "My bunkie told

23   me that the cell phone was his and that he put it in my locker when he saw the Officer approach.

24   I'm not guilty of possession of anything."  (Id.) at 42.)  The SHO explained petitioner's rights

25   with regard to the calling of witnesses at the hearing.  (Id.)  Petitioner stated that C/O Henderson

26   would be an "adverse witness."  (Id.)  Petitioner requested that inmate Ashley testify for the

2

1   defense, and stated that Ashley would testify "the phone is his and that he placed it into my

2   locker when he saw the Officer approaching."  (<u>Id.</u>)

3               Inmate Ashley was called as a witness at the disciplinary hearing and testified that

4   the cell phone in question belonged to him and that he had placed it in petitioner's locker after

5   other inmates yelled out a warning that a correctional officer was approaching.  (<u>Id.</u>)  C/O

6   Henderson testified that he did not see any inmate, including inmate Ashley, put anything in

7   petitioner's locker, and he did not see any inmate approach the locker.  (<u>Id.</u>)  When asked why he

8   had searched petitioner's locker, C/O Henderson stated: "Because [petitioner] was cooking.  I felt

9   that if he had contraband, it would be in his locker."  (<u>Id.</u>)

10              The SHO found petitioner guilty of the prison rules violation.  (<u>Id.</u> at 43.)  He

11   made the following findings in support of his decision:

> 12   The SHO is convinced that the phone was already in MITCHELL's locker making MITCHELL in possession of the cell phone through
> 13   Constructive Possession . . . .  This offense requires only proof that the item was contraband.  This item qualifies as contraband as
> 14   Inmate MITCHELL was in possession of an item, which is not authorized.

16   (<u>Id.</u>)  According to the report of the hearing, petitioner's disciplinary conviction was based on the

17   statements of C/O Henderson in the RVR and Henderson's testimony at the disciplinary hearing

18   that he did not see any inmate place anything in petitioner's locker as he approached the cell.

19   (<u>Id.</u>)  Petitioner was assessed a 30-day loss of work time credits, a 90-day suspension of Friday

20   visiting privileges, and reduction to privilege group "C" for 90 days.  (<u>Id.</u>)

21              After exhausting the administrative appeals process, petitioner challenged his

22   disciplinary conviction in a petition for writ of habeas corpus filed in the Solano County Superior

23   Court.  (<u>Id.</u> at 63.)  That court rejected petitioner's claims, ruling as follows:

> 24   On December 8, 2009, Petitioner Eric Mitchell filed this petition for writ of habeas corpus.  Petitioner challenges the outcome of his
> 25   disciplinary hearing, in which he was found guilty of possessing contraband.

26

1    The decision of the hearing officer is supported by some evidence
     in the record.  (Superintendent v. Hill (1985) 472 U.S. 445, 447; In
2    re Zepeda (2006) 141 Cal. App.4th 1493, 1497.)  Officer
     Henderson found a cell phone in Petitioner's locker and did not see
3    inmate Ashley or Petitioner move towards or place anything in the
     locker while he was approaching.  This is sufficient evidence of
4    possession.  In reviewing disciplinary decisions, courts do not
     examine the entire record, evaluate the credibility of witnesses, or
5    reweigh the evidence.  (Hill, 472 U.S. at p. 455.)

6    Furthermore, case law clearly recognizes constructive possession
     as a type of possession in contraband cases.  (See, e.g., Zepeda, 141
7    Cal. App.4th 1493.)  Constructive possession is simply one way of
     proving the possession element of the offense of possession of
8    contraband.  (See, e.g., People v. Williams (1971) 5 Cal.3d 211,
     215; People v. Francis (1969) 71 Cal.2d 66, 71.)  It is not a
9    separate offense or regulation that needs to be approved through
     the legislative or administrative process; rather, it is a judicially
10   created theory of liability for the offense of possession of
     contraband.  (Williams, 5 Cal.3d at p. 215; Francis, 71 Cal.2d at p.
11   71.)

12   The petition for writ of habeas corpus is DENIED.

13   (Id. at 63-64.)

14        Petitioner subsequently filed a petition for writ of habeas corpus in the California

15   Court of Appeal for the First Appellate District, which was summarily denied by order dated

16   May 27, 2010.  (Id. at 67.)  Petitioner then filed a petition for writ of habeas corpus in the

17   California Supreme Court, which was also summarily denied.  (Id. at 69.)

18        On December 10, 2010, petitioner commenced this action by filing a federal

19   petition for writ of habeas corpus in this court.

20   **II.  Standards of Review Applicable to Habeas Corpus Claims**

21        An application for a writ of habeas corpus by a person in custody under a

22   judgment of a state court can be granted only for violations of the Constitution or laws of the

23   United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

24   interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

25   13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

26   1149 (9th Cir. 2000).

                                    4

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   simply because that court concludes in its independent judgment that the relevant state-court

2   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3   application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v.

4   Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

5   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

6   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

7   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

8   the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

9   (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

10  obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

11  ruling on the claim being presented in federal court was so lacking in justification that there was

12  an error well understood and comprehended in existing law beyond any possibility for fairminded

13  disagreement." Harrington,131 S. Ct. at 786-87.

14          If the state court's decision does not meet the criteria set forth in § 2254(d), a

15  reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

16  Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

17  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

18  of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19  considering de novo the constitutional issues raised.").

20          The court looks to the last reasoned state court decision as the basis for the state

21  court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

22  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

23  from a previous state court decision, this court may consider both decisions to ascertain the

24  reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

25  banc).  "When a federal claim has been presented to a state court and the state court has denied

26  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

6

1  of any indication or state-law procedural principles to the contrary." <u>Harrington</u>, 131 S. Ct. at

2  784-85.  This presumption may be overcome by a showing "there is reason to think some other

3  explanation for the state court's decision is more likely." <u>Id</u>. at 785 (citing <u>Ylst v. Nunnemaker</u>,

4  501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

5  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

6  determine whether habeas corpus relief is available under § 2254(d). <u>Stanley</u>, 633 F.3d at 860;

7  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is

8  not de novo review of the constitutional issue, but rather, the only method by which we can

9  determine whether a silent state court decision is objectively unreasonable." <u>Himes</u>, 336 F.3d at

10  853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

11  "showing there was no reasonable basis for the state court to deny relief." <u>Harrington</u>, 131 S. Ct.

12  at 784.

13          When it is clear, however, that a state court has not reached the merits of a

14  petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

15  federal habeas court must review the claim de novo.  <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v.</u>

16  <u>Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006); <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir.

17  2003).[2]

18  **III.  <u>Petitioner's Claims</u>**

19          Petitioner's claims for federal habeas relief are somewhat difficult to decipher and

20  appear to have evolved between the filing of the petition and his submission of his traverse.  In

21  his habeas petition, petitioner claims, in essence, that his federal and state due process and equal

22  protection rights were violated by his disciplinary conviction because he was not provided

23  adequate notice of the prison disciplinary charge of "constructive" possession of a cellular phone

24

25  _____

26  [2]  The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue.  <u>See Williams v. Cavazos</u>, 646 F.3d 626, 639-41 (9th Cir. 2011), <u>cert. granted in part</u>, ___U.S.___, 132 S. Ct. 1088 (2012).

brought against him, that such a disciplinary offense is not reflected in the California Code of

Regulations, and therefore there effectively has been an "under ground rule change" of the

governing regulations if "constructive" possession were found to be a prison rules violation.

(Pet. at 6, 8-9.)  Petitioner has attached as exhibits to his habeas petition the administrative

responses to his prison administrative appeals of his disciplinary conviction, in which he alleged

the following:

> It is the appellant's position that he had an inmate witness that
> proved he was innocent of the RBR charge.  The appellant alleges
> the Senior Hearing Officer (SHO) stated that he would issue an
> RVR to any inmate that came forward and took ownership of the
> cell phone and he would find the appellant guilty through
> "constructive possession."  The appellant contends that he was
> discriminated against because he is a life term inmate and that he
> did not receive a fair and impartial hearing.  The appellant
> contends that the SHO was trying to get him not to call any
> friendly witnesses when he stated his personal prejudice of life
> term inmates.  The appellant contends that the SHO did not
> document all the information provided by Correctional Officer
> (C/O) Henderson and did not consider all evidence presented.  The
> appellant alleges that the SHO violated the California Code of
> Regulations, Title 15, Section (CCR) 3320 when he ordered the
> appellant to leave the hearing room while CO Henderson was still
> in the hearing room.  The appellant contends that relative to other
> inmates who received the same punishment, he received "extra
> punishment" due to his pleading Not Guilty.  The appellant
> contends that this was discriminatory toward him and a form of
> reprisal.  The appellant states that the SHO violated his rights by
> involving his personal opinion in the fact finding of the hearing.

(Id. at 23; see also id. at 28-32.)  Petitioner has also attached to his federal habeas petition the

declaration of inmate Ashley executed in 2009, in which Ashley stated that he placed his cell

phone in petitioner's locker after he heard other inmates announcing that a correctional officer

was approaching the cell.[3]  (Id. at 46.)  Finally, petitioner has attached to his federal habeas

---

[3] Petitioner has also presented evidence that inmate Ashley was subsequently charged with and found guilty of "claiming ownership of cell phone," on the grounds that his false testimony at petitioner's disciplinary hearing was an attempt to obtain the dismissal of the charges brought against petitioner.  It appears that inmate Ashley pled "guilty" to the disciplinary charge brought against him.  (Id. at 49.)

petition documentation regarding disciplinary charges brought against other inmates for possession of a cell phone, including the penalties assessed against those inmates following their convictions.  (Id. at 55-61.)

In his traverse, citing the decision in Hines v. Thompson, 336 F.3d 848 (9th Cir. 2003), petitioner for the first time claims that his disciplinary conviction violates the Ex Post Facto Clause of the federal Constitution because at the time of his conviction, "California had a penalty for 'possession' of contraband, not 'constructive possession.'" (Doc. No. 22 (Traverse) at 3.)  In this regard, petitioner argues:

> Here, at the time of petitioner Mitchell's disciplinary hearing, there was no penalty for "constructive possession" of a cellular telephone.  That action became a penalty after petitioner had already begun his petition for writ of habeas corpus in State and Federal courts.  He had no way to know or predict that the California Department of Corrections and Rehabilitation would change its own regulations in December 23, 2011 (effective date: December 9, 2011; Reference NOTICE OF CHANGE TO REGULATIONS, Number 11-16) to allow for constructive possession of a cell phone.

(Id. at 5.)[4]

Petitioner argues that the December 9, 2011 amendment to the regulations governing prison discipline significantly increased the possibility that he would serve a more lengthy period of incarceration because a disciplinary conviction on his record would increase his chances of being found unsuitable for parole at any future parole suitability hearing he may

/////

---

[4]  At the time of petitioner's disciplinary conviction, 15 CCR § 3006(c)(19) prohibited possession of a "cellular telephone or other electronic communications device."  15 CCR § 3006(c)(19) (effective from August 4, 2008 through December 31, 2010).  Subsection (c)(19) was repealed by amendment operative December 9, 2011, and subsection (a) was amended to provide that an inmate may not possess "or assist in circulating" a cellular telephone.  15 CCR § 3006, History, #16.  However, the December 9, 2011 amendment also amended subsection (a) to prohibit possession "or constructive possession" only of "any weapons, explosives, explosive making material, poisons or any distructive [sic] devices."  Therefore, the addition of the language "constructive possession" in subsection (a) in the 2011 amendment does not appear to have any relevance to the prohibition on possessing or circulating a cell phone.

receive.[5]  Respondent contends that petitioner has failed to raise a cognizable federal habeas

claim in this regard because, in light of his indeterminate life sentence, petitioner cannot establish

that a successful challenge to his prison disciplinary conviction will affect the fact or duration of

his confinement.  (Doc. No. 21 (Answer) at 3.)  This court rejects respondent's argument in this

regard for the reasons set forth in the court's order filed August 23, 2012, (Doc. No. 17), and will

therefore address petitioner's claims on their merits.

**A.  State Law Claims**

To the extent petitioner is claiming his prison disciplinary conviction for

possession of a cell phone on a theory of constructive possession violated state law or California

regulations related to prison, including the California Administrative Procedures Act, he has

failed to state a cognizable federal habeas claim.  As noted above, the federal writ is not available

for alleged error in the application of state law, and habeas corpus cannot be utilized in federal

court to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Challenges to

a state court's interpretation of state law are not cognizable in a federal habeas corpus

proceeding.  See Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly

held that 'it is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions."); Rivera v. Illinois, 556 U.S. 148, 158 (2009) ("[A] mere error of state

law . . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)

and Estelle, 502 U.S. at 67, 72-73); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state

court's interpretation of state law . . . binds a federal court sitting in federal habeas"); Lewis v.

Jeffers, 497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state

law).  Further, a habeas petitioner may not "transform a state-law issue into a federal one" merely

by asserting a violation of the federal constitution.  Langford v. Day, 110 F.3d 1380, 1389 (9th

---

[5]  Although petitioner was found unsuitable for parole by the Board of Parole Hearings at a parole suitability hearing on August 2, 2011, he does not challenge that decision by the Board in the instant federal habeas petition.  (Traverse at 1.)

Cir. 1997).  Rather, petitioner must show that the decision of the state courts somehow "violated the Constitution, laws, or treaties of the United States."  Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting Estelle, 502 U.S. at 68).  In light of these authorities, petitioner is not entitled to federal habeas relief on any claim that his disciplinary conviction violated state law or California regulations governing prisons.

**B.  Due Process**

Petitioner claims that his prison disciplinary conviction violated his Fourteenth Amendment right to due process.  It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum).  An inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.  In the disciplinary hearing context, an inmate does not have a right to counsel, retained or appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471 U.S. 491, 495 (1985).  However, as a general rule, inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary hearings.  Ponte, 471 U.S. at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976).  The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.

11

1    The decision rendered on a disciplinary charge must be supported by "some

2  evidence" in the record.  Hill, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge

3  cannot be "without support" or "arbitrary."  Id. at 457.  The "some evidence" standard is

4  "minimally stringent," and a decision must be upheld if there is any reliable evidence in the

5  record that could support the conclusion reached by the fact finder.  Powell v. Gomez, 33 F.3d

6  39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705

7  (9th Cir. 1987)).  See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990);

8  Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is

9  satisfied in a particular case does not require examination of the entire record, independent

10  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy,

11  801 F.2d 1080, 1105 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor,

12  515 U.S. 472 (1995).  Indeed, in examining the record, a court is not to make its own assessment

13  of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.  The question is

14  whether there is any reliable evidence in the record that could support the decision reached.

15  Toussaint, 801 F.2d at 1105.

16    Where a protected liberty interest exists, the requirements imposed by the Due

17  Process Clause are "dependent upon the particular situation being examined."  Hewitt v. Helms,

18  459 U.S. 460, 472 (1983).  The process due is such procedural protection as may be "necessary to

19  ensure that the decision . . . is neither arbitrary nor erroneous."  Washington v. Harper, 494 U.S.

20  210, 228 (1990).  In identifying the safeguards required in the context of disciplinary

21  proceedings, courts must remember "the legitimate institutional needs of assuring the safety of

22  inmates and prisoners" and avoid "burdensome administrative requirements that might be

23  susceptible to manipulation."  Hill, 472 U.S. at 454-55.  The requirements of due process in the

24  prison context involve a balancing of inmate rights and institutional security concerns, with a

25  recognition that broad discretion must be accorded to prison officials.  Wolff, 418 U.S. at

26  560-63; see also Baxter, 425 U.S. at 324.

1    In this case, petitioner was given advance written notice of the disciplinary charge

2 brought against him; to wit, possession of a camera cell phone.  Petitioner is apparently arguing

3 that he was entitled to specific advance notice that he could be found guilty of this charge under a

4 theory of "constructive" possession of the phone, as opposed to a theory of "actual" possession of

5 the phone.  This argument is unavailing.  As petitioner was advised by the Solano County

6 Superior Court, "constructive possession," is simply a means of demonstrating possession of an

7 item.  It is not a separate charge to which he is entitled to specific notice.[6]  Petitioner was not

8 entitled to separate advance notice of all of the legal theories that could support a finding that he

9 possessed the cell phone found in his locker.  Rather, pursuant to former 15 CCR § 3006(c)(19),

10 petitioner was entitled to advance notice that he was in possession of unauthorized contraband (a

11 cell phone).  The RVR, including the allegations of the reporting officer, clearly gave petitioner

12 such notice and enabled him to mount an appropriate defense to the charge against him.  (Pet. at

13 39.)  Petitioner has not suggested or explained how advance notice that he could be found guilty

14 of possession of the cell phone under a theory of "constructive possession" would have changed

15 his defense strategy.  Petitioner's defense was that he did not own the cell phone and that inmate

16 Ashley, the owner of the phone, had stashed it in petitioner's locker when he realized a

17 correctional officer was approaching.  This defense was applicable to any theory of "possession"

18 that prison officials' chose to present.

19    Petitioner was also given a written statement of the evidence relied upon by prison

20 officials and the reasons for the disciplinary action taken against him.  He was allowed to call the

21

22    [6] "Constructive possession" is found where a person "knowingly holds ownership,
dominion, or control over the object and the premises where it is found."  United States v.
23 Thongsy, 577 F.3d 1036, 1041 (9th Cir. 2009).  In California, "Constructive possession occurs
when the accused maintains control or a right to control the contraband; possession may be
24 imputed when the contraband is found in a place which is immediately and exclusively accessible
to the accused and subject to his dominion and control, or to the joint dominion and control of
25 the accused and another."  People v. Williams, 5 Cal.3d 211, 215 (1971).  "Actual" possession is
found where a person "knows of the presence of an item and has physical control of it, or has the
26 power and intention to control it.  Thongsy, 577 F.3d at 1041.  In this case, the SHO found that
petitioner was in possession of the camera cell phone because it was discovered in his locker.

1   witness he requested and to cross-examine C/O Henderson.  Moreover, there is no evidence in

2   the record before this court that the SHO was biased or impartial.[7]

3              Finally, there was "some evidence" supporting the SHO's decision that petitioner

4   possessed a camera cell phone.  C/O Henderson testified that he found a cell phone in

5   petitioner's locker.  The correctional officer testified that he did not see anyone else place the cell

6   phone in the locker as he was walking toward petitioner's cell.  That testimony constitutes "some

7   evidence" to support the SHO's finding that petitioner was guilty of possession of contraband.

8   To the extent petitioner is arguing there was insufficient evidence he possessed the cell phone

9   because the evidence only supported a finding of "constructive" possession of the phone, and not

10  "actual" possession, he is mistaken.  As explained by the Solano County Superior Court, under

11  California law either "actual" possession or "constructive" possession is sufficient to establish

12  possession of contraband.  Here, there was "some evidence" introduced at the hearing that

13  petitioner knowingly held ownership or control over the cell phone in his locker.  This was

14  sufficient to support the SHO's finding that petitioner was guilty of the charged rules violation.

15  Although inmate Ashley testified that he owned the phone and put it in petitioner's locker

16  himself, the SHO apparently did not believe that testimony.  In reviewing petitioner's due

17  process claim, this court must accept the SHO's assessment of the credibility of witnesses and

18  may not make its own assessment or re-weigh the evidence.

19             Petitioner was afforded all the process that was due him under the federal

20  Constitution in the context of a prison disciplinary proceeding.  Accordingly, he is not entitled to

21  federal habeas relief with respect to his due process claim.

22  /////

23  /////

24

25      [7] To the extent petitioner is claiming the SHO was biased against inmates serving life
    sentences, or that petitioner received additional punishment because he pleaded not guilty to the
26  disciplinary charge brought against him, his claim fails for lack of any evidentiary support.

### C. Equal Protection

Petitioner claims, without elaboration, that he was denied the right to "equal protection of the law" in connection with his prison disciplinary conviction.  (See e.g., Pet. at 6, 8.)  He does not explain how his disciplinary conviction violated the Equal Protection Clause.  Petitioner's equal protection claim is therefore vague and conclusory and should be rejected on that basis.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  In any event, petitioner's equal protection claim fails on the merits.

The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982) and Tigner v. Texas, 310 U.S. 141, 147 (1940)). The Fourteenth Amendment "guarantees equal laws, not equal results." McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991) (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 273 (1979).  A habeas petitioner has the burden of alleging facts sufficient to establish "a prima facie case of uneven application." McQueary, 924 F.2d at 835.  "[A] mere demonstration of inequality is not enough . . . There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises." Id.

Petitioner has failed to demonstrate that any other inmate who was similarly situated to him was treated differently, either in terms of the conducting of a prison disciplinary hearing or in the disciplinary sentence he received.  The state courts' rejection of petitioner's equal protection claim was not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to federal habeas relief on that claim.

### D. Claims Raised in the Traverse

In his traverse, petitioner states that the claims contained in his federal habeas petition "implicate[ ] the ex post facto clauses of the Federal Constitution."  (Traverse at 3.)  Any

1  ex post facto challenge to petitioner's disciplinary conviction would be a new claim, not raised in

2  the petition filed with this court.  Of course, a traverse is not the proper pleading in which to raise

3  additional grounds for relief.  Cacoperdo v. Demosthenes , 37 F.3d 504, 507 (9th Cir. 1994); see

4  also Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only

5  issues which are argued specifically and distinctly in a party's opening brief").

6  Moreover, to the extent petitioner now seeks to present an Ex Post Facto Clause

7  claim in his traverse, any such claim is unexhausted.  State courts must be given the first

8  opportunity to consider and address a state prisoner's habeas corpus claims.  See Rhines v.

9  Weber, 544 U.S. 269, 273-74 (2005) (citing Rose v. Lundy, 455 U.S. 509, 518-19 (1982)); King

10  v. Ryan, 564 F.3d 1133 (9th Cir. 2009) ("Habeas petitioners have long been required to

11  adjudicate their claims in state court - that is, 'exhaust' them - before seeking relief in federal

12  court."); Farmer v. Baldwin, 497 F.3d 1050, 1053 (9th Cir. 2007) ("This so-called 'exhaustion

13  requirement' is intended to afford 'the state courts a meaningful opportunity to consider

14  allegations of legal error' before a federal habeas court may review a prisoner's claims.")

15  (quoting Vasquez v. Hillery, 474 U.S. 254, 257 (1986)).  In general, a federal court will not grant

16  a state prisoner's application for a writ of habeas corpus unless "the applicant has exhausted the

17  remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1).  A state will not be

18  deemed to have waived exhaustion unless the state, through counsel, expressly waives the

19  requirement.  28 U.S.C. § 2254(b)(3).

20  A petitioner satisfies the exhaustion requirement by fairly presenting to the

21  highest state court all federal claims before presenting the claims to the federal court.  See

22  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v.

23  Connor, 404 U.S. 270, 276 (1971); Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008).  A

24  federal claim is fairly presented if the petitioner has described the operative facts and the federal

25  legal theory upon which his claim is based.  See Wooten, 540 F.3d at 1025 ("Fair presentation

26  requires that a state's highest court has 'a fair opportunity to consider . . . and to correct [the]

16

1   asserted constitutional defect.'"); Lounsbury v. Thompson, 374 F.3d 785, 787 (9th Cir. 2004)

2   (same) (quoting Picard, 404 U.S. at 276)); Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir.

3   1999).  This requires petitioner to have "characterized the claims he raised in state proceedings

4   specifically as federal claims."  Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005)

5   (emphasis in original) (internal citation omitted).  "In short, the petitioner must have either

6   referenced specific provisions of the federal constitution or cited to federal or state cases

7   involving the legal standard for a federal constitutional violation.  Mere 'general appeals to broad

8   constitutional principles, such as due process, equal protection, and the right to a fair trial,' do

9   not establish exhaustion."  Id. (quoting Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999)).

10  Thus, a claim is unexhausted where the petitioner did not fairly present the factual or legal basis

11  for the claim to the state court.  See Picard, 404 U.S. at 275.  "[I]t is not enough . . . that a

12  somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982).  As a

13  rule, the "mere similarity of claims is insufficient to exhaust."  Duncan, 513 U.S. at 365-66.

14  In this case, any Ex Post Facto claim that petitioner now seeks to raise has not been properly

15  exhausted by presentation to the state's high court and would be subject to dismissal by this

16  federal habeas court.

17         In any event, petitioner has not established an Ex Post Facto violation.  "The Ex

18  Post Facto Clause of the Constitution prohibits our state and federal governments from

19  retroactively imposing additional punishment for commission of a criminal offense."  American

20  Civil Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1052-53 (9th Cir. 2012).  See also

21  U.S. Const. art. I, §§ 9, cl. 3.  The Ex Post Facto Clause applies to "every form in which the

22  legislative power of a state is exerted," including "a regulation or order."  Ross v. State of

23  Oregon, 227 U.S. 150, 162-63 (1913).  "In its most basic application, the clause precludes

24  Congress and the states from enacting laws that criminalize an act already performed."

25  Schroeder v. Tilton, 493 F.3d 1083, 1087 (9th Cir. 2007).

26  /////

1    A law violates the Ex Post Facto Clause of the United States Constitution if it:  (1)

2 punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's

3 punishment greater than when the crime was committed; or (3) deprives a person of a defense

4 available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).

5 The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or

6 increase the punishment for criminal acts."  Himes, 336 F.3d at 854 (quoting Souch v. Schaivo,

7 289 F.3d 616, 620 (9th Cir. 2002)).  See also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504

8 (1995).  The Ex Post Facto Clause is also violated if: (1) state regulations have been applied

9 retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of

10 increasing the punishment attached to the defendant's crimes.  Himes, 336 F.3d at 854.  Not

11 every law that disadvantages a defendant is a prohibited ex post facto law.  In order to violate the

12 clause, the law in question must essentially alter "the definition of criminal conduct" or increase

13 the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 442 (1997).

14    As described above, petitioner argues in the traverse that his disciplinary

15 conviction for possession of camera cell phone based upon his "constructive possession" of that

16 contraband violated the Ex Post Facto Clause, apparently on the theory that the December 9,

17 2011 amendments to 15 CCR § 3006, which prohibit "constructive possession" of weapons,

18 explosives or poisons, demonstrate that "constructive" possession of a camera cell phone was not

19 a violation of the regulations at the time of his disciplinary hearing.   However, even assuming

20 that those 2011 amendments had some relevance to the disciplinary charge brought against

21 petitioner, they were not retroactively applied to him at his 2009 disciplinary hearing.  Rather,

22 petitioner was found guilty of the charged rules violation based on the regulations and law in

23 effect at the time of his disciplinary hearing.  Moreover, his punishment for the disciplinary

24 violation has not been increased based on any later amendments to § 3006, nor was the nature of

25 his disciplinary violation retroactively changed by any later amendment.  Under these

26 circumstances, petitioner's prison disciplinary conviction did not violate the Ex Post Facto

18

1    Clause.  Cf. Himes, 336 F.3d 848 (finding Ex Post Facto violation where the Board of Prison

2    Terms applied 1994 regulations to increase Himes' period of incarceration for crimes committed

3    in 1978).

4            Finally, petitioner's claim that he was found guilty of a disciplinary offense that

5    did not exist in California at the time of his prison disciplinary proceeding is more in the nature

6    of a claim that the evidence introduced at the hearing was insufficient to support his conviction

7    on the disciplinary charge because the law required prison authorities to prove that he was in

8    "actual" possession of the phone, and not simply "constructive" possession.  However, as

9    discussed above, there was "some evidence" to support the SHO's conclusion that petitioner was

10   guilty of a violation of 15 CCR § 3006(c)(19), as that regulation was written at the time of his

11   disciplinary hearing.

12           For all of these reasons, petitioner is not entitled to federal habeas relief with

13   respect to any Ex Post Facto claim he has attempted to present in these proceedings.

14   **IV.  Conclusion**

15           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

16   a writ of habeas corpus be denied.

17           These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

19   one days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22   shall be served and filed within fourteen days after service of the objections.  Failure to file

23   objections within the specified time may waive the right to appeal the District Court's order.

24   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

25   1991).  In his objections petitioner may address whether a certificate of appealability should issue

26   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

1   Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

2   when it enters a final order adverse to the applicant).

3   DATED: January 11, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
mitchell3311.hc

20